1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8 | STEVEN BRADLEY HODGES,

Case No.: 3:18-cv-00278-HDM-WGC

9 |     Petitioner,

**Order**

10 | v.

11 | RENEE BAKER, et al.,

12 |     Respondents.

13

14       Steven Bradley Hodges, a Nevada prisoner, filed a petition for writ of habeas corpus under

15 28 U.S.C. § 2254. This court denies Hodges' habeas petition, denies him a certificate of

16 appealability, and directs the clerk of the court to enter judgment accordingly.

17 **I.**    **BACKGROUND**

18       Hodges' convictions are the result of events that occurred in Washoe County, Nevada on

19 March 2, 2011. (ECF No. 10-18.) On that day, between 8:30 p.m. and 9:30 p.m., law enforcement

20 officers assigned to the repeat offender program were surveilling Hodges and observed him drive

21 his blue Chevrolet pickup "to the rear of a business, Victory Woodworks, . . . and turn[] off his

22 lights." (ECF No. 10-16 at 6-8.) They then observed Hodges load nineteen long "metal poles or

23 brackets," that he obtained from a fenced-in area, into the bed of his pickup and then drive to a

motel parking lot. (*Id.* at 10-11, 76.) The following morning, March 3, 2011, at about 7:00 a.m., the officers started surveilling Hodges again and eventually "followed him to the area of Western Metals Recycling" where he sold the metal brackets that he had obtained the night before. (*Id.* at 16, 53-54.) The replacement cost of the nineteen brackets was $1,100.00. (*Id.* at 77.)

Following a guilty plea, Hodges was convicted of grand larceny and burglary. (ECF No. 11-9). The state district court adjudged Hodges to be a habitual criminal and sentenced him to 10 to 25 years in prison on both counts to run concurrently. (ECF No. 13-15.) Hodges appealed, and the Nevada Supreme Court affirmed on September 18, 2013. (ECF No. 11-35.) Remittitur issued on October 16, 2013. (ECF No. 11-36.)

Hodges filed his pro se state habeas petition and counseled supplemental petition on October 31, 2013, and November 2, 2015, respectively. (ECF Nos. 11-37, 13-6.) The state district court denied the petition on May 27, 2016. (ECF No. 13-17.) Hodges appealed, and the Nevada Court of Appeals affirmed on June 14, 2017. (ECF No. 14-6.) Remittitur issued on July 11, 2017. (ECF No. 14-7.)

Hodges' *pro se* federal habeas petition was filed on October 17, 2018. (ECF No. 6.) This court dismissed Grounds 6 and 7 in its screening order. (ECF No. 5.) The respondents moved to dismiss Hodges' petition on November 29, 2018. (ECF No. 9.) This court granted the motion, in part, dismissing Ground 5 and determining that Grounds 1 and 2 were unexhausted. (ECF No. 18.) In response to this court's order, Hodges moved to voluntarily dismiss Grounds 1 and 2. (ECF No. 19.) In his remaining grounds for relief, Grounds 3 and 4, Hodges alleges the following violations of his federal constitutional rights: his sentence was cruel and unusual, and his trial counsel failed to timely commence discovery and failed to investigate an issue involving a GPS tracking device.

1 (ECF No. 6.) The respondents answered these remaining claims on November 12, 2019. (ECF No.

2 20.) Hodges did not reply.

3 **II.     STANDARD OF REVIEW**

4        28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas

5 corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

6        An application for a writ of habeas corpus on behalf of a person in custody pursuant
         to the judgment of a State court shall not be granted with respect to any claim that
7        was adjudicated on the merits in State court proceedings unless the adjudication of
         the claim –

8
         (1) resulted in a decision that was contrary to, or involved an unreasonable application
9            of, clearly established Federal law, as determined by the Supreme Court of the
             United States; or
10
         (2) resulted in a decision that was based on an unreasonable determination of the facts
11            in light of the evidence presented in the State court proceeding.

12 A state court decision is contrary to clearly established Supreme Court precedent, within the

13 meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law

14 set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

15 materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538

16 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v.*

17 *Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly

18 established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state

19 court identifies the correct governing legal principle from [the Supreme] Court's decisions but

20 unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*,

21 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be

22 more than incorrect or erroneous. The state court's application of clearly established law must be

23 objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

3

1    The Supreme Court has instructed that "[a] state court's determination that a claim lacks

2    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

3    correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing

4    *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a

5    strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

6    at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

7    (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

8    state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

9    (internal quotation marks and citations omitted)).

10   **III.    DISCUSSION**

11       **A.    Ground 3**

12       In Ground 3, Hodges alleges that his sentence is cruel and unusual. (ECF No. 6 at 7.)

13   Hodges elaborates that his 10-to-25-year sentence "for the theft of metal that netted him

14   $97[.00] . . . offends the fundamental notions of human dignity." (*Id.*) In affirming Hodges'

15   judgment of conviction, the Nevada Supreme Court held:

16       Hodges contends that the district court abused its discretion by adjudicating him as
         a habitual criminal and imposing a disproportionate sentence which shocks the
17       conscience. We disagree.

18       The district court has broad discretion to dismiss a count of habitual criminality.
         *See* NRS 207.010(2); *O'Neill v. State*, 123 Nev. 9, 12, 153 P.3d 38, 40 (2007). Our
19       review of the record reveals that the district court understood its sentencing
         authority and considered the appropriate factors prior to making its determination
20       to adjudicate Hodges as a habitual criminal. *See Hughes v. State*, 116 Nev. 327,
         333, 996 P.2d 890, 893 (2000); *see also* NRS 207.016(5); *O'Neill*, 123 Nev. at 15-
21       16, 153 P.3d at 42-43 (once a district court declines to exercise its discretion to
         dismiss an allegation of habitual criminality, the only factual findings the judge
22       may then make must relate solely to the existence and validity of the prior
         convictions). We conclude that the district court did not abuse its discretion by
23       adjudicating Hodges as a habitual criminal.

4

1

2

3

4

5

6

> Additionally, Hodges has not alleged that the district court relied solely on impalpable or highly suspect evidence or demonstrated that the sentencing statute is unconstitutional. *See Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 489-90 (2009). Hodges' prison term of 10-25 years falls within the parameters provided by the relevant statute, *see* NRS 207.010(1)(b)(3), and is not so unreasonably disproportionate to the gravity of the offense and his history of recidivism as to shock the conscience, *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979); *see also Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion). We conclude that the district court did not abuse its discretion at sentencing. *Parrish v. State*, 116 Nev. 982, 989, 12 P.3d 953, 957 (2000).

7   (ECF No. 11-35 at 3-4.) The Nevada Supreme Court's rejection of Hodges' claim was neither

8   contrary to nor an unreasonable application of clearly established law as determined by the United

9   States Supreme Court and was not based on an unreasonable determination of the facts.

10        The Eight Amendment provides that "cruel and unusual punishments [shall not be]

11   inflicted." U.S. Const. amend. VIII. "[B]arbaric punishments" and "sentences that are

12   disproportionate to the crime" are cruel and unusual punishments. *Solem v. Helm*, 463 U.S. 277,

13   284 (1983) (concluding that a habitual offender's sentence for a seventh nonviolent felony for life

14   without the possibility of parole is disproportionate). The Eighth Amendment does not, however,

15   mandate strict proportionality between the defendant's sentence and the crime. *See Ewing v.*

16   *California*, 538 U.S. 11, 23 (2003). Rather, "only extreme sentences that are 'grossly

17   disproportionate' to the crime" are forbidden. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991).

18   "In assessing the compliance of a non-capital sentence with the proportionality principle, [this

19   court] consider[s] 'objective factors'" such as "the severity of the penalty imposed and the gravity

20   of the offense." *Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006). "[S]uccessful challenges

21   based on proportionality are 'exceedingly rare,' and deference is due legislative judgments on such

22   matters." *Id.* (citing *Solem*, 463 U.S. at 289-90).

23

Hodges was adjudged guilty under Nevada's habitual criminal statute. (*See* ECF No. 13-15.) That statute, Nev. Rev. Stat. § 207.010(1)(b), provides that a habitual criminal is "a person convicted in [Nevada] of . . . [a]ny felony, who has previously been three times convicted . . . of any crime which under the laws of the situs of the crime or of this State would amount to a felony."[1] Nev. Rev. Stat. § 207.010(1)(b)(1)-(3) further provides that a person found to be a habitual criminal "shall be punished for a category A felony by imprisonment in the state prison" for life without the possibility of parole, life with the possibility of parole after ten years, or a definite term of 25 years with parole eligibility after 10 years. Hodges was sentenced to a definite term of 25 years in prison with parole eligibility after 10 years for each of his convictions to run concurrently. (ECF No. 13-15.)

The Nevada Supreme Court reasonably concluded that Hodges' sentence was "not so unreasonably disproportionate to the gravity of the offense and his history of recidivism." (ECF No. 11-35 at 3.) As the state district court reasoned at his sentencing hearing, Hodges "ha[d] a substantial criminal history, far more than is needed to determine that [he was] a habitual criminal." (ECF No. 11-8.) In fact, he had previously been adjudicated a habitual criminal. Hodges was previously convicted of possession of stolen property in 1996, assault with a deadly weapon in 2002, and two separate convictions for possession of stolen property in 2002. (See ECF No. 10-18 at 4.)

Although Hodges' sentence of 10 to 25 years in prison for grand larceny of 19 metal brackets and burglary of a store to obtain those brackets is substantial, Hodges' sentence was based on his habitual criminal status and was within the parameters of Nevada's habitual criminal statute.

---

[1] The Nevada Supreme Court, the final arbiter of Nevada law, has stated that "NRS 207.010 makes no special allowance for non-violent crimes." *Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992).

1   Nev. Rev. Stat. § 207.010(1)(b); *see Solem*, 463 U.S. at 297 ("[A] State is justified in punishing a

2   recidivist more severely than it punishes a first offender."); *see also United States v. Parker*, 241

3   F.3d 1114, 1117 (9th Cir. 2001) ("Generally, as long as the sentence imposed on a defendant does

4   not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds.").

5   Hodges' criminal record demonstrates that the aggregate gravity of his offenses was severe, such

6   that his sentence does not violate the Eight Amendment. *Taylor*, 460 F.3d at 1098. The record

7   reflects that Hodges agreed to the sentence he now argues "shocks the conscience." (ECF No. 6 at

8   7.) Indeed, Hodges' plea agreement provided that he would "not object to the State's argument

9   that [he] should be sentenced as a Habitual Criminal on" the condition "that the State only seeks

10   25 years in the Nevada State prison, with parole eligibility after a minimum of 10 years has been

11   served."[2] (ECF No. 11-5 at 5.) The Nevada Supreme Court's conclusion that Hodges' sentence

12   did not violate the proscription against cruel and unusual punishment, U.S. Const. amend. VIII,

13   was not objectively unreasonable. Therefore, Hodges is not entitled to relief on Ground 3.

14       **B.**    **Ground 4**

15       In Ground 4, Hodges alleges that his trial "[c]ounsel did not commence discovery until two

16   weeks before trial and only filed a motion for discovery less than two days before trial." (ECF No.

17   6 at 9.) Further, Hodges alleges that his trial counsel failed to "investigate whether a GPS was

18   unlawfully placed on [his] vehicle . . . without first obtaining a warrant." (*Id.*) In affirming the

19   denial of Hodges' state habeas petition, the Nevada Court of Appeals held:

20       Hodges claims the district court erred by denying his postconviction habeas petition
          because he was deprived of effective assistance of counsel. He argues defense
21       counsel was ineffective for failing to investigate and seek the suppression of
          evidence obtained through the warrantless use of a Global Positioning System
22       (GPS) device. And he asserts the district court erred in its application of *Osburn v.*

23

---

[2]The plea agreement also provided for the dismissal of Count 2, a charge of possession of stolen property. (ECF No. 11-5 at 5.)

*State*, 118 Nev. 323, 44 P.3d 523 (2002), to this ineffective-assistance-of-counsel claim.

. . . .

The district court conducted an evidentiary hearing and made the following factual findings: Detectives assigned to the Repeat Offender Program conducted surveillance on Hodges and placed a GPS device on his vehicle prior to his arrest. Detective Reed Thomas was unsure of when the device was placed on the vehicle or where the vehicle was located at the time. However, Hodges testified his vehicle was either parked at a motel or a halfway house during the weeks prior to his arrest. Both of these locations would have allowed the detectives to place the GPS device on the vehicle without Hodges' knowledge.

The district court further found defense counsel had no independent recollection of being notified about the GPS device and testified there would have been no reason to act on this information because the warrantless placement of a GPS device on a vehicle was permissible during that timeframe. At the time of Hodges' guilty plea, *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999), *overruled in part by United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir. 2012), was good law and stated the placement of an electronic tracking device on the undercarriage of a vehicle was not a search or seizure, and *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012), holding the placement of a GPS device on a vehicle constitutes a search within the meaning of the Fourth Amendment, had not been decided.

Our review of the record reveals the district court's factual findings are supported by substantial evidence and are not clearly wrong, and Hodges has not demonstrated the district court erred as a matter of law. We conclude the district court did not misapply *Osburn* to Hodges' ineffective-assistance-of-counsel claim, *see Osburn*, 118 Nev. at 327, 44 P.3d at 526 (concluding that appellant did not have a reasonable expectation of privacy in the exterior of a vehicle he had parked in plain view of the street), and Hodges failed to demonstrate counsel was ineffective, *see Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008) ("[C]ounsel's failure to anticipate a change in the law does not constitute ineffective assistance of counsel."); *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004) (holding a petitioner must prove the facts underlying his claims of ineffective-assistance by a preponderance of the evidence).

(ECF No. 14-6 at 2-4.)

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's

deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

First, Hodges' allegation that his trial counsel acted deficiently regarding discovery is conclusory, as it fails to articulate what discovery his trial counsel failed to obtain or how the untimely motion for discovery would have altered his plea. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying habeas relief because the petitioner's "conclusory allegations did not meet the specificity requirement"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Further, Hodges' allegation is belied by the record. A motion for discovery was filed by the defense

1   nearly a year prior to trial on November 1, 2011. (*See* ECF No. 10-25.) And although Hodges' trial

2   counsel did move again for discovery five days prior to trial on September 5, 2012, he noted in the

3   motion that "[c]ounsel for the State of Nevada . . . has allowed this [c]ounsel . . . to review the

4   prosecution's entire file, last week in his office, and to copy." (ECF No. 10-39 at 2.) Indeed, the

5   second motion for discovery was made only "to ensure that no exculpatory evidence is being

6   withheld by the State." (*Id.*)

7          Turning to the GPS issue, Hodges' trial counsel testified at the post-conviction evidentiary

8   hearing that he received an email from the State three days before trial, on September 7, 2012,

9   which stated that the prosecutor "was told yesterday during a phone interview of one of the ROP

10  detectives, Nick Reed, that he thinks they were using a GPS device that was attached to Hodges'

11  truck when they were conducting their surveillance of him." (ECF No. 13-16 at 13-14.) Hodges'

12  trial counsel then explained that he did not "think at the time [the email about the GPS issue] sent

13  any big red flags up" or believe he "needed to stop and do research on the GPS device as a search."

14  (*Id.* at 16, 18.) Hodges testified at the post-conviction evidentiary hearing that he "had no idea"

15  that "law enforcement [had] placed a tracking device on [his] vehicle," as his trial counsel never

16  informed him of the email he had received from the State. (*Id.* at 35-36.) Hodges claims he

17  "[p]robably" would not have pleaded guilty had he "known that a tracking device was on [his]

18  vehicle at the time of [his] arrest" because he believed "it was a violation of search and seizure"

19  based on his familiarity "with the search and seizure laws and parole." (*Id.* at 36, 40.)

20         As was explained previously, regarding this claim, the Nevada Court of Appeals held that

21  "[a]t the time of Hodges' guilty plea, *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999),

22  *overruled in part by United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir. 2012), was

23  good law" and "*United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012) . . . had not been

decided." However, Hodges changed his plea on the first day scheduled for trial, September 10, 2012. (*See* ECF No. 11-4.) This was after *Jones* and *Pineda-Moreno* were decided on January 23, 2012, and August 6, 2012, respectively. Therefore, because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts, this claim will be reviewed de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires"); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that . . . the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo.").

On January 23, 2012, the United States Supreme Court "h[e]ld that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *United States v. Jones*, 565 U.S. 400, 404 (2012). The decision was rendered after Hodges' arrest in March 2011. Importantly, however, the Ninth Circuit Court of Appeals held that the decisive date is the one in which the mobile tracking device is installed and utilized: "the agents' conduct in attaching the tracking devices in public areas and monitoring them was authorized by then-binding circuit precedent," so "[w]hatever the effect of *Jones*, then, the critical evidence here is not subject to the exclusionary rule." *United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir. 2012) (explaining that "it is enough to conclude that suppression is not warranted here because the agents objectively relied on then-existing binding precedent when they approached Pineda-Moreno's Jeep in public areas, attaching tracking devices to it, and used those devices to monitor the Jeep's movement"). Because law enforcement officers attached the GPS device to Hodges' vehicle before *Jones* became law on January 23, 2012, their conduct was not prohibited and, under *Pineda-Moreno,* a motion to suppress would have been futile. Thus,

1   counsel was not ineffective for failing to research and file a motion to suppress in light of *Jones*.

2   *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to

3   litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the

4   defendant must also prove that his Fourth Amendment claim is meritorious.").  Moreover, and for

5   the same reason, Hodges has not established that he would not have chosen to plead guilty had

6   counsel pursued a motion to suppress under *Jones*.

7          Nor did counsel have a basis for pursuing suppression under Nevada law. In 2002, the

8   Nevada Supreme Court "h[e]ld that in order for an unreasonable search or seizure to exist, the

9   complaining individual must have a reasonable expectation of privacy, which requires both a

10   subjective and an objective expectation of privacy in the place searched or the item seized." *Osburn*

11   *v. State*, 118 Nev. 323, 327, 44 P.3d 523, 526 (2002). In *Osburn*, the defendant had moved to

12   suppress evidence obtained from the placement of a GPS tracker on the bumper of his truck, which

13   had been parked on the street outside his house.  In affirming the denial of the motion, the Nevada

14   Supreme Court held that the defendant had established neither a subjective nor an objective

15   expectation of privacy in the bumper of his vehicle. It explained:

16         First, as in *McIver*, there is no indication that Osburn had a subjective expectation
          of privacy to the exterior of his vehicle because Osburn did not take any steps to

17         shield or hide the area from inspection by others. Moreover, the vehicle was parked
          in plain view on the street. Second, even if Osburn had manifested a subjective

18         expectation of privacy, no objective expectation of privacy exists under these
          circumstances. The exterior of a vehicle, including its bumper, is open to public

19         view and susceptible to casual inspection by the passerby.

20   *Id.*

21          At the post-conviction evidentiary hearing, Officer Reed testified that he did not "recall

22   when the tracking device was placed on [Hodges'] car" or where Hodges' vehicle "was parked

23   when the device was placed," but he explained that officers "typically place those devices in a

1    public place somewhere, in a parking lot or something of that nature." (ECF No. 13-16 at 46, 48).

2    At no time did Hodges testify that his vehicle was kept on anything other than property accessible

3    to the public. Hodges testified that, following his release from prison in November 2010, he resided

4    first at Safe Harbors for 90 days and then at the Desert Rose Inn, where he remained until his arrest

5    in this case. (ECF -No. 13-16 at 29-36, 39.)  The evidence at the hearing established that at both

6    locations, Hodges' vehicle was parked in a location accessible and open to the public. (*See* ECF

7    No. 13-16.)  On this record, then, Hodges has failed to meet his burden that he had a reasonable

8    expectation of privacy in his vehicle. Thus, he has not established that counsel was ineffective for

9    failing to file a motion to suppress pursuant to *Osburn* or that he would not have pled had such a

10   motion been filed.

11       Accordingly, because Hodges fails to demonstrate that his trial counsel acted deficiently in

12   not researching the GPS issue or taking any action to suppress evidence based on the GPS issue,

13   and has not established that he would not have pleaded guilty if a motion to suppress had been

14   filed, Hodges' claim of ineffective assistance of counsel fails. *Strickland*, 466 U.S. at 688. Hodges

15   is denied federal habeas relief for Ground 4.

16   **IV.    CERTIFICATE OF APPEALABILITY**

17       This is a final order adverse to Hodges. Rule 11 of the Rules Governing Section 2254 Cases

18   requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua*

19   *sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA.

20   *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to

21   28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial

22   showing of the denial of a constitutional right." With respect to claims rejected on the merits, a

23   petitioner "must demonstrate that reasonable jurists would find the district court's assessment of

1  the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing

2  *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue

3  only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of

4  a constitutional right and (2) whether this court's procedural ruling was correct. *Id*. Applying these

5  standards, this court finds that a certificate of appealability is unwarranted.

6  **V.      CONCLUSION**

7       In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

8            1.      The petition (ECF No. 6) is DENIED.

9            2.      A certificate of appealability is DENIED.

10           3.      The clerk of the court is directed to enter judgment accordingly.

11  Dated: September 2, 2021

12                                          HOWARD D. MCKIBBEN
                                            United States District Judge

14